IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

BYRON HICKEY,                    *        CASE NO.
             Plaintiff,       *        4:07-cv-96 (CDL)
                                 *
VS.                              *
                                 *
COLUMBUS, GEORGIA                *
CONSOLIDATED GOVERNMENT,         *
             Defendant.       *

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
FOR AWARD OF ATTORNEYS' FEES**

      Plaintiff hereby submits this Brief in support of his counsel's request for attorneys' fees reasonably expended in obtaining significant relief in this matter.

**I.      STATEMENT OF FACTS**

      The Defendant City of Columbus retaliated against Cpl. Byron Hickey when he spoke out in late December 2005 against the unfair treatment of a fellow officer, Alicia Davenport (a black female), about the discriminatory treatment of other black employees, and about the retaliation targeted against him for voicing his concerns.  Shortly after Cpl. Hickey spoke up for Officer Davenport, the Defendant gave him a false negative performance evaluation that was not corrected until seven months later and only after Cpl. Hickey filed an EEOC charge alleging intentional retaliation by the City.  Having received exemplary performance evaluations for the previous 25 years, including being honored with the prestigious award of "Officer of the Year," Cpl. Hickey complained in writing that his 2006 evaluation was obvious retaliation for his having spoken out about the unfair treatment of Officer Davenport.

      The Defendant further retaliated against Cpl. Hickey by exploiting what should have been a routine Internal Affairs investigation regarding Cpl. Hickey firing his weapon in pursuit

of a criminal who had smashed up the patrol car parked in his driveway.  The Chief of Police immediately placed Cpl. Hickey on administrative assignment during which Hickey was prohibited from working off-duty security jobs on which he depended to support his family. Although the Internal Affairs investigation into the discharge of firearm was completed in one day, which should have resulted in Hickey being returned to regular duty at that time and therefore being able to resume his off-duty security jobs, Chief Boren used this opportunity to retaliate further against Cpl. Hickey by keeping him on a five-month long administrative assignment, thereby intentionally denying him the privilege afforded other police officers of working off-duty security jobs to supplement his income.

Despite Cpl. Hickey's repeated complaints, Chief Boren refused to release him from the administrative assignment and repeatedly refused to return him to his unit, narcotics/vice.  Even when Cpl. Hickey complained twice to the City EEO Officer Reather Hollowell (in February and late April 2006), complained to the City H.R. Director Tom Barron (in early May 2006), and complained on April 10, 2006 to Mayor Poydasheff, Chief Boren, City Manager Isaiah Hugley, and City Attorney Clifton Fay, none of these city officials took action to stop the retaliation, instead telling Cpl. Hickey that they could not help him, that Chief Boren was in charge.

Finally, Chief Boren refused to return Cpl. Hickey to his narcotics/vice unit and instead transferred him to Burglary and Theft, as further retaliation for Cpl. Hickey having spoken up about his concerns that blacks and females were not being treated fairly in the police department. From the moment Cpl. Hickey spoke out against the illegal treatment of Officer Davenport and continued to complain about the retaliation against him, the City of Columbus caused Cpl. Hickey to lose income, to be unfairly kicked out of his unit, and to receive a bogus bad

performance evaluation that was corrected only after Hickey filed an EEOC charge of discrimination and retaliation.

After receiving his right to sue from the EEOC, Plaintiff filed suit against the Defendant on June 1, 2007. The parties conducted reasonable discovery, saving costs by combining discovery in this case with that in the related case of *Davenport v. City of Columbus*.

On February 12, 2008, the Defendant filed a motion for summary judgment, along with 119 Statements of Material Fact, to which Plaintiff responded on March 31, 2008. The Court held a hearing on the motion for summary judgment on June 24, 2008, and issued its order on that motion on August 25, 2008. The Defendant filed an appeal to the 11th Circuit Court of Appeals, and, as a result of the appellate ruling on April 30, 2010, and as a result of the Plaintiff voluntarily dismissing claims against Chief Boren individually after the case was remanded from the Court of Appeals, the case proceeded to a jury trial against the City of Columbus on Plaintiff's retaliation claims for the bad performance evaluation, the lengthy administrative assignment, and the retaliatory transfer out of the narcotics/vice unit.

This Court's decision on summary judgment granted judgment in favor of the Defendant on certain claims. Likewise, the 11th Circuit decision and Plaintiff's voluntary dismissal of the claim against Boren individually resulted in judgment for the Defendant on certain other claims. In a good faith effort to determine what amount of time was spent on unsuccessful claims and to delete any billing for those claims, Plaintiff's counsel reviewed Plaintiff's responsive brief to Defendant's summary judgment motion and determined that the time that Plaintiff's counsel devoted to arguing unsuccessful claims (state law claims, First Amendment claim, claims against individual defendants) in the brief and in the response to the 119 Statements of Material Fact was approximately 22% of Plaintiff's brief and response.

3

The jury trial in this matter began on Monday, November 29, 2010, and was conducted throughout that entire week and into the next week through Monday, December 6, 2010.   Although the Court directed a verdict for the Defendant on the bad performance evaluation claim, the Court specifically noted when doing so that all evidence related to the bad performance evaluation claim was still relevant to the two remaining issues that were later determined by the jury in Plaintiff's favor.   The jury deliberated quickly and returned its verdict in favor of the Plaintiff on all claims that had been submitted to the jury, i.e. whether or not the City had retaliated against Cpl. Hickey with the lengthy administrative assignment and/or the punitive transfer out of the narcotics/vice unit.   The jury assessed the value of the harm done to the Plaintiff by the City's intentional retaliation in the amount of $306,969.55.   On December 10, 2010, the Court entered judgment in favor of the Plaintiff in the amount of $306,969.55.

Plaintiff was represented in this case by lead counsel Gwyn Newsom and, in the discovery phase, by co-counsel Richard Bunn, who both worked on the case for more than two years, with Newsom performing the bulk of the work.   Co-counsel Maxine Hardy was associated in the case when the Defendant appealed to the 11th Circuit Court of Appeals, with Ms. Hardy then performing the bulk of the legal research and writing necessary to meet the challenges posed by Defendant's appeal and other legal motions in this case.   Regarding trial efforts, in an effort to conserve resources and costs, counsel Richard Bunn actively assisted only during trial preparation, during the voir dire of jurors and selecting the jury, and throughout the remainder of the first day of trial.   Although counsel Bunn was also present for the last day of trial, Plaintiff has not billed for that time.   At trial, lead counsel Newsom and co-counsel Hardy worked together in conducting the trial, but also divided specific tasks, such as Hardy doing research and argument on motions, and each counsel dividing the work of examining witnesses.   The case

4

involved a large number of witnesses and documentary evidence, as well as complex factual and legal issues, all contributing to the amount of time necessary to be spent on this case.

Plaintiff's counsel took 14 depositions and defended one in this case. Plaintiff's counsel worked extremely long hours in particular immediately before the pretrial conference and in the weeks before trial, including several weekends, in order to properly prepare the case for trial. It was truly a grueling task for lead counsel and co-counsel, each a solo practitioner with minimal staff support. Additionally, Plaintiff's counsel had to turn away potential clients in the weeks leading up to trial, as well as during the trial, since their practices virtually stopped while preparing for and conducting the trial of this case.

This case was also very time-consuming for Plaintiff's counsel during the weeks of work spent responding to the Defendant's motion for summary judgment, particularly in light of the Defendant filing 119 Statements of Material Facts, each of which required a specific response. Additionally, throughout the more than two years of litigation, Plaintiff's lead counsel needed to respond to frequent communications from her client who was actively involved in his case, frequently calling to inquire about its status, to pass along relevant facts, and to suggest counsel follow particular leads or to pursue certain lines of argument. Plaintiff's lead counsel also was called upon fairly frequently by her client regarding his ongoing concerns about retaliation on his job, since he was, and continues to be, employed as a police officer with the City.

## II.    ARGUMENT AND CITATION OF AUTHORITY

Plaintiff clearly qualifies as a "prevailing party" by virtue of the relief he has secured through this litigation, i.e. the jury's verdict in his favor in the total amount of $306,969.55 in compensatory damages for the Defendant's intentional retaliation against him. In fact, the amount of the verdict demonstrates an exceptional success for the Plaintiff. Consequently,

Plaintiff's award of attorneys' fees should similarly reflect the exceptional achievement of Plaintiff in this case, particularly since other potential counsel in this community need to know that pursuing civil rights claims is not only an admirable endeavor but will also result in sufficient and fair compensation for counsel assisting citizens in pursuing such claims.  Plaintiff herein clearly succeeded on a significant issue in litigation that has now brought about some benefit that was sought when the suit was filed, i.e. that employers should not intentionally retaliate against employees such as Plaintiff who speak out about unlawful discrimination and retaliation.  Hensley v. Eckerhart, 461 U.S. 424 (1983), 31 FEP 1169

In determining an objective estimate of the value of a lawyer's services, this Court must multiply those hours reasonably expended by a reasonable hourly rate, i.e., compute the "lodestar." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988).  "[T]he lodestar figure represents a presumptively reasonable fee." Military Circle Pet Center v. Cobb County, 734 F. Supp. 502, 504 (N.D. Ga. 1990); Walters v. City of Atlanta, 652 F. Supp. 755, 757-58 (N.D. Ga. 1985).  The product of these two figures will provide the court with the "lodestar" figure.  The Court can then determine whether any adjustments to the lodestar are appropriate.  Hensley, 461 U.S. at 434.

## A.    **REASONABLE HOURS**

In determining whether counsel expended a reasonable amount of time on the case, the Court looks first to the time claimed.

### 1.    Time Expended

The hours claimed or spent on a case are "the most useful starting point for determining the amount of a reasonable fee." Hensley, 461 U.S. at 433.  Counsel must exercise "billing judgment in determining the hours reasonably expended," id. at 437, and attorneys should be

compensated for time reasonably expended in seeking an award of fees from the Court.  Johnson v. University College of University of Alabama Birmingham, 706 F.2d 1205, 1207 (11th Cir.), *cert. denied*, 464 U.S. 994 (1983); Johnson v. Mississippi, 606 F.2d 635, 638 (5th Cir. 1979)

Counsel's certification that the work itemized has in fact been performed is "entitled to considerable weight on the issue of time required . . . ."  Perkins v. Mobile Housing Bd., 847 F.2d 735, 738 (11th Cir. 1988)  Indeed, this Circuit has stated that "[s]worn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case."  Perkins, 847 F.2d at 738

Plaintiff's lead counsel Gwyn P. Newsom, co-counsel Richard A. Bunn, co-counsel Maxine B. Hardy, and paralegal Sheryl Herring have stated in their affidavits that they maintained accurate records of time spent and expenses incurred in this matter.  (Exhs. B, C, D, & E)  Counsel's hours represent a specific division of labor.  Lead counsel Newsom's time, which was the bulk of time spent on this case, along with co-counsel Bunn's time, co-counsel Hardy's time, and paralegal Herring's time, clearly contributed to the significant success of Plaintiff at trial.  Additionally, not only did paralegal Herring spend reasonable time before trial in organizing the evidence, which assisted in a more efficient and expeditious trial, but Herring's attentive, active assistance at the trial of this matter was invaluable in helping Plaintiff achieve success.  Co-counsel Bunn's time was not duplicative of lead counsel Newsom's time, as Bunn provided valuable assistance in conducting depositions in this case, as well as assistance in responding to the Defendant's motion for summary judgment and in the activities of the first day of trial.  Throughout the discovery phase of this case, Defendant was, at all times, represented by at least two attorneys and often three or four attorneys, i.e. lead counsel Rebecca Miller, and City attorneys Jaimie DeLoach and Clifton Fay, as well as attorney Stephanie Wald.  Furthermore, the

Defendant was represented at trial by five attorneys (Kirsten Stevenson, Thomas Gristina, and Jim Clark, as well as City Attorney Fay and Assistant City Attorney DeLoach).

Co-counsel Hardy's time was not duplicative, as she performed necessary legal assistance only after the discovery and summary judgment phases of the litigation had concluded.  Co-counsel Hardy began working on this case after the Court denied the Defendant's summary judgment motion and the Defendant filed an interlocutory appeal to the 11th Circuit on qualified immunity issues.  Plaintiff's counsel has engaged in time-consuming efforts to submit a billing statement that reflects only the work for claims on which Plaintiff was successful.

The Plaintiff's attorneys were required to prepare for a trial that involved 132 Defendant's Exhibits, and 127 Plaintiff's Exhibits.  Many of the exhibits were lengthy transcripts of statements taken by the CPD's Office of Professional Standards (OOPS), all of which Plaintiff's counsel had to master to be able to capitalize on their content for use at trial. Plaintiff's counsel also needed to review before trial numerous deposition transcripts, in addition to the transcripts of several witnesses at the Davenport trial (transcripts that were ordered by the Defendant's counsel and which Plaintiff's counsel therefore also needed to review).

Plaintiff's counsel divided up the work at the trial of this case.  Plaintiff's counsel chose to limit counsel Bunn's trial work in order to be frugal with the expense of trial.  Therefore, co-counsel Bunn participated only in the first day of trial, i.e. in conducting the *voir dire* of the jury and assisting in picking the jury in this case, as well as assisting with the tasks of the first day of trial.  Although Bunn was also present at counsel table for the last day of trial, i.e. closing arguments, jury charges, and deliberation, Plaintiff has not billed for Bunn's time for that day.

Lead counsel Newsom conducted Plaintiff's opening statement, the direct examination of witnesses Herman Miles and Dechon Grant, the direct and rebuttal examination of the Plaintiff,

and the cross-examination of defense witnesses Rodney Spear, Bill Tuning, David Josey, J.D. Hawk, Reather Hollowell, Isaiah Hugley, Charles Tate, Assistant Chief Charles Rowe, and former Mayor Bob Poydasheff, and conducted the rebuttal phase of Plaintiff's closing argument. Co-counsel Hardy cross-examined defense witnesses Chief R.T. Boren and Dean Walton. Hardy also was in charge of determining which portions of the deposition transcript of unavailable defense witness David Horiuchi would be read to the jury, as well as conducting the reading of the transcript into evidence. Co-counsel Hardy also assisted lead counsel Newsom throughout the trial, particularly taking the lead in responding to all legal motions and arguments asserted by Defendant immediately prior to and during the trial, including the motion for judgment as a matter of law. Co-counsel Hardy was primary counsel regarding the jury instructions, special interrogatories and jury verdict form, and conducted the first portion of Plaintiff's closing argument. Plaintiff clearly needed the representation of three attorneys who divided the tasks of questioning numerous witnesses and introducing numerous documents in this case. In comparison to the Plaintiff and his two witnesses, the Defendant presented the testimony of at least 12 defense witnesses, which required that Plaintiff's attorneys be thoroughly prepared to neutralize and/or discredit their testimony to achieve a verdict in favor of the Plaintiff.

Furthermore, "(t)here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the unique contribution of each lawyer." Norman, 836 F.2d at 1302. As the Court is aware, the Defendant in this matter was represented at all times by at least two attorneys and was represented throughout the trial by as many as five attorneys (Stevenson, Gristina, Clark, Fay, and DeLoach), as well as their support staff.

Lead counsel states that she has carefully reviewed this listing and has exercised prudent billing judgment with regard to the billable time claimed.  (Exhs. A and B)  From the initiation of this case, counsel has spent necessary time pursuing the related and intertwined claims of Plaintiff.  For time billed, lead counsel states that all of this time expended was necessary to pursue the retaliation claims upon which Plaintiff prevailed.  To the extent that time billed could be segregated as billed solely for certain claims upon which Plaintiff did not prevail, that designation has been included.  These entries show the time spent, but instead of a dollar amount entered for that time, counsel has entered the notation of "N/C."  Since in many instances separating out time spent on successful versus unsuccessful claims was difficult if not impossible, counsel has voluntarily reduced such time entries by 25% to reflect time spent on unsuccessful claims.  Counsel's time records here are accordingly entitled to great weight in assessing the reasonableness of the number of hours expended.

Plaintiff's counsel has made a 25% reduction in time for all pretrial work which could possibly be related to lost claims because, in reviewing Plaintiff's summary judgment brief, approximately 22% of that brief was devoted to lost claims.  In an abundance of fairness, Plaintiff's counsel has rounded that figure up to a larger reduction, i.e. 25%, of all discovery and summary judgment work that could not definitely be characterized as solely for purposes of successful claims.  No time has been billed for any appellate work by counsel Newsom. Furthermore, only partial time has been billed for Hardy's time during the appellate phase of the case, not for the purpose of being compensated for the appellate work itself, but merely for compensating Hardy for necessary time spent becoming acquainted with the facts of the case.

Plaintiff's counsel has also submitted affidavits from two other attorneys with experience in civil rights litigation practicing in the Middle District of Georgia, i.e. Janet Hill and John

Roper.  These attorneys aver that they have each reviewed the time and billing records of the

Plaintiff's counsel as well as other records relating to this litigation and have concluded that the

number of billable hours for which the Plaintiff seeks payment is reasonable.  (Exhs. F, G)

Plaintiff's counsel has thus provided ample evidentiary support for the number of billable hours

for which they claim payment.

        2.   <u>Reasonableness Under the Johnson Factors</u>

While this Circuit has followed recent Supreme Court precedent in abandoning the

unguided use of the twelve factors derived from the ABA Code of Professional Responsibility

DR 2-106 (1980), and adopted in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th

Cir. 1974), an attempt to apply these considerations is still deemed useful in calculation of a

reasonable fee.  *Hensley*, 461 U.S. 424, 103 S.Ct. 1933 (1983); *Norman*, at 1299.  Four *Johnson*

factors - the time and labor required, the novelty and difficulty of the case, the amount involved

and the result obtained, and the skill of the attorneys requisite to perform the legal service

properly - should be considered in assessing the reasonableness of the hours claimed.  *See*

*generally, No*rman, 836 F.2d at 1299-1302

        a.   <u>Time and Labor Required</u>

In petitioning for fees "[c]ounsel should make a good faith effort to exclude from [the]

fee request hours that are excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at

434; *Norman*, 836 F.2d at 1301[1]  However, when all the legal theories are derived from a

common core of facts, reduction is not required or necessitated, even if the Plaintiff does not

---

[1]    Attorneys should also be compensated for the time reasonably expended in seeking an award of fees from the Court.  *Jonas v. Stack,* 758 F.2d 567 (11th Cir. 1985);  *Johnson v. University College of University of Alabama Birmingham*, 706 F.2d 1205, 1207 (11th Cir.) *cert. denied*, 464 U.S. 994 (1983); *Johnson v. Mississippi*, 606 F.2d 635 (5th Cir. 1979).

prevail on all claims.  The court and, likewise, the parties need not disallow or reject hours that were related and necessary to the successful claims.  *Hensley*, 461 U.S. at 435; *Morgado v. Birmingham-Jefferson Co. Civil Defense Corp.*, 706 F.2d 1184, 1192-93 (11th Cir. 1983)

As previously noted, Plaintiff's counsel has affirmed that she carefully reviewed the time records of lead counsel, co-counsel, and paralegal and has exercised prudent billing judgment with regard to the billable time claimed.  To the extent that time expended on successful claims versus unsuccessful claims, was separable, that time has also been excluded.  However, virtually all the time expended in this case was necessary in order for Plaintiff to achieve a successful verdict on his prevailing claim of retaliation and would have been necessary, even if he had not initially pursued any of the additional claims.  Thus, the entire time counsel is requesting should be allowed inasmuch as it was spent more on the litigation as a whole, which resulted in a favorable verdict for the Plaintiff.  As the Supreme Court has stated, a lawsuit "cannot be viewed as a series of discreet claims"; rather, in assessing fees, the "district court should focus on the significance of the overall relief obtained by the Plaintiff in relation to the hours reasonably expended on the litigation."  *Hensley*, 461 U.S. at 435.  Even so, in a good faith effort to reflect unsuccessful claims, counsel has reduced much of the time claimed by 25%.  However, because evidence regarding all of the claims that went to trial in this case was evidence that was necessary for the successful claims, no such across-the-board reduction of time was taken, nor was warranted, for the trial work of Plaintiff's counsel.  As this Court has acknowledged, the evidence regarding the bad performance evaluation was clearly relevant to the other claims (punitive administrative assignment and punitive transfer).  Furthermore, evidence regarding Plaintiff's discrimination claims was relevant to Plaintiff's successful retaliation claims, i.e. facts regarding alleged discrimination are relevant to the retaliation issue

12

of Plaintiff's having engaged in protected activity, as previously noted in footnote 8 of this Court's Order on Plaintiff's Motion for Attorney's Fees in the *Davenport* case.

Essentially all of the litigation of this case, including trial preparation as well as the actual trial, was conducted in the same way, and to the same extent, that it would have been conducted had plaintiff not been pursuing any claims other than the claims on which he prevailed.  In fact, Plaintiff prevailed on 100% of the claims that were presented to the jury.  All evidence presented at trial was necessary, critical evidence for the successful claims.

The total time spent, after reductions in the exercise of billing judgment, is set forth in lead counsel's itemized bill for herself, her co-counsel, and her paralegal.  (Exh. A)  A review of this bill indicates the nature of the activities performed.  In addition, the litigation stretched over more than four years, thus causing the cumulative number of hours spent to mount.

The Fifth Circuit in <u>Johnson</u> stated that the district judge "should weigh the hours claimed against his own knowledge, experience, and expertise and the time required to complete similar activities."  488 F.2d at 717.  As stated in the affidavit of independent, experienced litigation counsel, the time expended by the attorneys in this action was reasonable in light of the nature of this case and in light of the Plaintiff's counsel's level of expertise and experience. (Exhs. F, G)  These attorneys have reviewed select pleadings and the time sheets of Plaintiff's counsel before rendering that conclusion.

        b.     <u>Difficulty of The Issues Presented</u>

The court in <u>Johnson</u> noted the importance of justly compensating attorneys who undertake and litigate a case with difficult issues. <u>Johnson</u>, 488 F.2d at 718.  This factor should be taken into account in determining an appropriate fee award here.  As the court is aware, this case involved numerous documents and witnesses.  Plaintiff's task of disproving the Defendant's

false claims that its retaliatory actions against Plaintiff were done in good faith, for legitimate reasons, and were not because of Plaintiff's discrimination and retaliation complaints, was a difficult but necessary component in achieving success.

<u>The Amount Involved and the Results Obtained</u>

Title VII and Section 1981/1983 actions play a significant role in our society. They serve as an important safeguard for an individual's federally protected rights to work in an environment free of unlawful discrimination.  Plaintiff's victory clearly indicated that the jury believed that he was retaliated against only because of his complaints about gender and race discrimination and that this type of intentional discrimination is not to be tolerated.  In fact, the significant size of the jury's verdict clearly speaks volumes about the significance of Plaintiff's victory.  The jury clearly spoke to this community that the harm done to Plaintiff by the Defendant's intentional retaliation was not a trifling slight but was, in fact, harm that was significant and compensable.  Plaintiff herein achieved significant vindication of an important constitutional right and is accordingly entitled to a full award of all reasonable fees and expenses.

c.   <u>The Skill and Expertise of the Attorneys</u>

Detailed information regarding the skill of Plaintiff's counsel, both lead counsel and co-counsel, is contained in the Affidavits of Counsel (Exhs B, C & D)  The experience and specialized expertise of Plaintiff's counsel enabled Plaintiff to pursue this case effectively and to achieve important success for their client.  In fact, the expertise of counsel allowed them to expend fewer hours in pursuing this case than would have had to be expended by less knowledgeable, less experienced counsel, particularly since Plaintiff's counsel were already extensively familiar with legal issues in the area of employment discrimination, as well as trial work, and therefore did not bill the many additional hours another attorney would have billed in

order to become knowledgeable of federal discrimination law, an extremely complicated, complex, and ever-changing area of law.  As one Court has observed, "It is also clear that but for the expertise which the plaintiff's counsel had developed in prior litigation of this type, many more hours would have been expended in prosecuting this case.... It is ironic that less experienced counsel would have spent more time, thereby elevating the lodestar figure."  In re: Domestic Air Transp. Litigation, 148 F.R.D. 297, 356 (N.,D. Ga. 1993).  The primary reason for the extensive hours spent on summary judgment, trial preparation, and trial was the extensive documents in this case and the numerous witnesses.  It is also significant that Plaintiff repeatedly tried to engage the Defendants in discussion to try to resolve the case, but Defendants repeatedly refused to do so.  In sum, the hours expended by counsel are reasonable.

## B.  REASONABLE HOURLY RATE

In assessing a reasonable hourly rate for Plaintiff's attorneys, this Court must evaluate the attorney's "knowledge of trial practice and knowledge of the substantive law."  Norman, 836 F.2d at 1301.  "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  Id. at 1299.  In short, the rate should "reflect what an attorney with similar experience, background, skill, and reputation would charge under the same circumstances."  In re: Chicken Antitrust Litigation, 560 F. Supp. at 971; In re: Domestic Air Transp. Litigation, 148 F.R.D. at 355.  The market rate applies whether the attorney is in public interest or private practice.  Mason v. Pierce, 806 F.2d 1556, 1557-58 (11th Cir. 1987).

### 1.  Johnson Factors Relevant to Hourly Rate

As noted above, a review of the factors delineated in Johnson v. Georgia Highway Express, 488 F.2d, 717-719 (1974), is still deemed useful in calculation of a reasonable fee.

15

<u>Hensley v. Eckerhart</u>, 461 U.S. 424, 103 S.Ct. 1933 (1983); <u>Norman</u>, at 1299.   "[T]he district court may wish to consider any of the <u>Johnson</u> factors to the extent that they suggest that comparables offered may not be relevant to the issues before the court or as they may affect the weight to be given to the comparables being offered the court." <u>Norman</u>, at 1299-1300.   The factors which are most relevant to the reasonableness of a requested hourly rate in this case are discussed below.

        a.   <u>The Customary Fee</u>

As stated in the Affidavits of Plaintiff's counsel, the rates requested in this case are commensurate with counsel's normal billing rates for similar cases and previous fee awards. (Exhs. B, C, D)  As attested to by the Affidavits of Plaintiff's counsel, as well as attorneys Hill and Roper, clearly establish that the range of market rates for counsel such as Plaintiff's counsel herein, for a case of this type, is at least $300 to $325 and, according to many practitioners in this area, actually between $350 to $500 per hour.  Plaintiff's counsel is asking for compensation at (Newsom) or below (Hardy and Bunn) the lowest end of that range.  Lead counsel bills some of her clients on an hourly basis for trial work, at the same rate as that requested herein. Furthermore, looking to the testimony of other attorneys who also typically bill clients is instructive.  These hourly rates are well within the fee parameters customarily charged by lawyers of comparable skill and experience in the relevant legal community for work of this kind. The reasonableness of these hourly rates is demonstrated by the averments in the affidavit of civil litigator and employment lawyer Roper (Exh. F), as well as that of civil rights litigator Hill (Exh. G)  Since the "relevant legal community" is the *district* in which the court sits, i.e. the Middle District of Georgia [<u>Luciano v. Olsten Corp.</u>, 109 F.3d 111, 115 (2nd Cir.)], both Roper's and Hill's affidavits are instructive and relevant since they practice within the Middle District.

16

Additionally, Plaintiff's lead counsel's active involvement in the state-wide chapter of the National Employment Lawyers Association (NELA-GA), provides a credible basis for Roper's and Hill's assessments, not only of counsel's skills but also of the reasonableness of the fee charged.  Particularly since the number of employment attorneys in Columbus who are primarily engaged in representing plaintiffs in civil rights cases is extremely small, the expertise of Plaintiff's counsel in this case is even more unique and therefore valuable.  Roper's affidavit is instructive and relevant, not only because he has practiced for almost 30 years and is intimately familiar with the rates charged by comparable attorneys in Columbus, but also because he is familiar with the work done by counsel in this case and attests to their expertise.

b.    <u>The Experience, Reputation and Ability of the  Attorneys</u>

The experience, reputation and ability of the attorneys are set forth in the attached Affidavits.  As these affidavits show, counsel here have extensive relevant experience and enjoy good professional reputations.  Counsel have extensive prior experience in civil rights litigation and/or other trial work.   Plaintiff has also submitted an affidavit from two independent, experienced civil rights litigators each stating that Plaintiff's counsel are knowledgeable, capable attorneys in the area of civil rights law and in general civil litigation and trial work, who are well known in the legal community and enjoy excellent reputations.

c.    <u>Awards in Similar Cases</u>

As described in several of the attached affidavits, the rates sought are commensurate with those that have been awarded in this District in recent years in civil rights cases of similar complexity.

17

d.   The Undesirability of the Case

The courts have recognized that civil rights cases are undesirable and thus warrant payment of a higher fee in order to attract competent counsel.  Johnson v. Georgia Highway Express, 488 F.2d at 719.   Civil rights and employment discrimination cases are viewed as undesirable by most members of the Bar.  See Searcy v. Crim, 692 F. Supp. 1363, 1366 (N.D. Ga. 1988) (Judge Shoob) ("Although there are a great many lawyers in the Atlanta area, the Court is aware that it is difficult to find any attorney who has the time, experience and financial cushion necessary to accept Section 1983 cases on a contingency basis")  They are undesirable for several reasons: the undesirable scrutiny of the attorneys' fee phase,[2] the long delay and uncertainty in payment, and the fact that identification of the attorney with such cases tends to discourage other types of clients from engaging her services.  Further, due to the enormous amount of trial preparation time in the weeks preceding trial, as well as the time and energy expended to try the case, Plaintiff's counsel lost several other potential new cases due to being unable to meet with potential clients during this time, as well as being forced to neglect several other pending cases which will cause further adverse effects on Plaintiff's counsel's future work on those cases.  In sum, the rates requested are reasonable.

C.   **REASONABLE EXPENSES**

Although Plaintiff could also seek an award of expenses of litigation under 42 U.S.C. § 2000(e) and 1981/1983 that were not included in the Bill of Costs (i.e. primarily additional

---

[2] One of the most undesirable parts of an employment discrimination case is the attorney fee phase.  The plaintiff's attorney is requested to expose to the critical scrutiny of her adversary and the Court every aspect of her work in a particular case.  Often, with the aid of hindsight, the defense attorney will purport to find areas of work which he alleges could have been done more efficiently or might have been left undone.  The plaintiff's attorney must impose on other attorneys and request that they examine her work and render an opinion as to its worth and reasonableness.  While such scrutiny is necessary under the statute, it is still very distasteful for the plaintiff's attorney and makes such cases highly undesirable.

18

copying expenses), Plaintiff's counsel, in good faith, declines to request any additional expenses not addressed by the Bill of Costs.  With respect to expenses, "the standard for reasonableness is given a liberal interpretation." *Loranger v. Stierheim*, 3 F.3d 356, 363 (11th Cir. 1993), *vacated on other grounds*, 10 F.3d 776 (11th Cir. 1994)  Therefore, Plaintiff requests merely the expenses claimed in her Bill of Costs filed in this case.  Plaintiff's counsel has averred that these expense charges are made at the rates at which she has customarily billed clients for these expenses and at the customary rates at which she is billed for services by typical vendors, such as court reporters, courier and investigators.  Plaintiffs are entitled to recover those expenses that were reasonable and necessary.  Dowdell v. City of Apopka, 698 F.2d 1181, 1192 (11th Cir. 1983) ("all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under § 1988.")  Plaintiffs' request for an award of these expenses, as requested in her Bill of Costs, should accordingly be approved.

### D.   ADJUSTMENT TO THE LODESTAR

The Court may adjust the fee upward or downward based on results obtained.  *Hensley*, 461 U.S. at 434.  If the Plaintiff obtains "excellent results," then his attorney should recover "a fully compensatory fee."  *Id*. at 435; *see also Norman*, 836 F.2d at 1302.  Particularly in cases such as this, when Plaintiff's lead counsel has worked on the case for more than four and a half years, when Plaintiff repeatedly but unsuccessfully sought reasonable efforts to resolve the matter without the delay and expense of a jury trial, and when Plaintiff has achieved an excellent result - prevailing on all claims submitted to the jury and achieving a verdict supporting his claim of intentional retaliation by the Chief of Police (a public official who, above all others, should comply with the law) in the significant amount of $306,969.55, it is reasonable to adjust the lodestar upwards.  Particularly since Plaintiff has shown billing restraint and economy, an

upward adjustment of the lodestar in this case is appropriate, and Plaintiff suggests that, should the Court determine in his discretion that it is appropriate, an upward adjustment of 25% (i.e. $77,444.25) is fair and reasonable in order to fully compensate Plaintiff's attorneys for the excellent results achieved.[3]

III.   **CONCLUSION**

Upon the basis of the evidence and case authority cited herein, Plaintiff's counsel respectfully request that the Court order the Defendant to pay to the Plaintiff the reasonable attorney's fees which have been expended in this litigation on behalf of Plaintiff, as reflected in the billing statement ($309.777.00), and, if deemed appropriate, enhanced by an upward adjustment of 25% ($77,444.25) for achieving an excellent result, for a total amount of $387,221.25.  Plaintiff further requests that he be allowed to amend his petition for attorneys' fees to ask for additional fees that may be incurred by his counsel in connection with his Reply to Defendants' Response to this motion for attorneys' fees.  See *Jones v. Stack*, 758 F.2d 567 (11th Cir. 1985).

Respectfully submitted this 8th day of January, 2011.

　_/s/ Gwyn P. Newsom
Gwyn P. Newsom
Law Office of Gwyn P. Newsom, LLC
Georgia State Bar No. 541450

P.O. Box 629
Columbus, GA  31902-0629
(706) 324-4900
Email:  gnewsomlaw@aol.com

---

3  Just as this Court, after already imposing an across-the-board reduction of 50% of the hours requested for losing half of the claims that were submitted to the jury, imposed an additional 25% downward adjustment in the lodestar in the companion *Davenport* case based on minimal success (i.e. verdict of only $5,000.00), similarly, in this case, based on the excellent success achieved (i.e. 100% win on claims submitted to the jury and a verdict of $306,969.55), an upward adjustment in the lodestar would be appropriate.

CERTIFICATE OF SERVICE

I do hereby certify that I am counsel for the Plaintiff in the above-styled action and that I have this 8th day of January, 2011 electronically filed the above and foregoing BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:   James C. Clark, jcc@psstf.com, Thomas F. Gristina, tfg@psstf.com, Kirsten C. Stevenson, kcs@psstf.com, Clifton Fay, cfay@columbusga.org, Jaimie DeLoach, jdeloach@columbusga.org, Richard A. Bunn, rabunlaw@aol.com, and Maxine Burns Hardy, maxineburnshardy@bellsouth.net.

I also certify that I have mailed by the United States Postal Service the document to the following non-CM/ECF participants:  none.

By:      _/s/ Gwyn P. Newsom
              Gwyn P. Newsom
              Counsel for Plaintiff

21