IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

BYRON N. HICKEY, *

    Plaintiff, *

vs. * CASE NO. 4:07-CV-96 (CDL)

COLUMBUS CONSOLIDATED *
GOVERNMENT,
 *
    Defendant.
 *

O R D E R

Plaintiff, a police officer employed by Defendant, brought employment discrimination claims against the Columbus Consolidated Government ("Columbus" or "the City") under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("§ 1981"). Plaintiff claimed that Columbus retaliated against him for opposing unlawful discrimination. Following extensive pretrial proceedings, the Court held a trial on Plaintiff's retaliation claims, which were based on three employment actions: (1) a negative performance review, (2) an extended administrative assignment, and (3) a transfer from the Vice unit to the Burglary and Theft unit. After five days of trial, the Court granted the City's motion for a judgment as a matter of law as to Plaintiff's negative performance review claim. The remaining retaliation claims were submitted to the jury, which found that Columbus retaliated against Plaintiff

for opposing unlawful discrimination, including race discrimination. Verdict 1-3, Dec. 6, 2010, ECF No. 148. The jury awarded Plaintiff damages in the amount of $306,969.55. Presently pending before the Court is the City's Renewed Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial or Remittitur (ECF No. 162). For the reasons set forth below, the motion is denied. The City's Motion to Stay Without Security (ECF No. 163) is granted.

DISCUSSION

**I. Motion for Judgment as a Matter of Law**

Judgment as a matter of law "is appropriate when a plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action." *Christopher v. Florida*, 449 F.3d 1360, 1364 (11th Cir. 2006). "But if there is substantial conflict in the evidence, such that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the motion must be denied." *Id.* (internal quotation marks omitted). The Court may not "assume the jury's role of weighing conflicting evidence or inferences, or of assessing the credibility of witnesses." *Ledbetter v. Goodyear Tire & Rubber Co.*, 421 F.3d 1169, 1177 (11th Cir. 2005).

2

To prevail on a retaliation claim, a plaintiff must show that (1) he engaged in statutorily protected activity, (2) he suffered a materially adverse employment action, and (3) there was a causal link between the two. *E.g., Dixon v. The Hallmark Cos.*, 627 F.3d 849, 856 (11th Cir. 2010). Columbus contends that it is entitled to judgment as a matter of law on Plaintiff's retaliation claims for the following reasons: (1) Plaintiff's transfer from Vice to Burglary and Theft was not *materially adverse*; (2) the undisputed evidence shows that the length of the administrative assignment was Plaintiff's own fault; (3) Plaintiff failed to establish causation; and (4) Plaintiff's claims are barred for failure to exhaust administrative remedies. The Court addresses each argument in turn.

### A. Transfer from Vice to Burglary and Theft

To establish that he suffered a materially adverse employment action, Plaintiff must prove that "a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). If the evidence was sufficient to support the jury's finding that the transfer from Vice to Burglary and Theft "might have dissuaded a reasonable worker from making or supporting a charge of discrimination," *id.* (internal quotation marks omitted), then Plaintiff has established this element of his retaliation claim.

3

Columbus contends that the evidence does not support the jury's finding that the transfer from Vice to Burglary and Theft was materially adverse. "Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* at 71 (internal quotation marks omitted). In *Burlington*, for example, a jury question existed as to whether the plaintiff's reassignment was materially adverse because the new assignment was "by all accounts more arduous and dirtier," the old assignment had more prestige because it required more qualifications, and the old assignment "was objectively considered a better job." *Id.*

Columbus argues that this case is closer to *Deprado v. City of Miami*, 264 F. App'x 769 (11th Cir. 2008) (per curiam), than it is to *Burlington*. In *Deprado*, a police officer was transferred from the Training Unit to the Patrol Unit, allegedly in violation of his First Amendment right to free speech. *Id.* at 771. The officer complained that the Training Unit was more prestigious than the Patrol Unit.[1] The Eleventh Circuit Court of Appeals concluded that

---

[1] The officer also contended that the transfer made him ineligible for a 2% incentive pay supplement, but the supplement was not available until six months after the transfer. The Eleventh Circuit Court of Appeals concluded that "the deprivation of a not-yet-existent supplement could not have chilled the exercise of constitutionally protected

4

there was "no evidence that the Patrol Unit job was more arduous or required more qualifications, or that anyone besides [the officer] objectively considered it a better job." *Id.* at 772.

Here, in contrast to *Deprado*, Plaintiff presented evidence from which a reasonable juror could conclude that the Vice Unit carried more prestige than the Burglary and Theft unit and that Plaintiff's transfer out of Vice could reasonably be seen as punishment. For example, both Plaintiff and Detective Dechon Grant testified that the Vice Unit is a prestige unit within the Columbus Police Department. Trial Tr. vol. 2, 120:18-21, Nov. 30, 2010, ECF No. 157 (Plaintiff testifying that Vice is a "prestige position" and that officers had to be "hand-picked to go there"); Trial Tr. vol. 5, 134:11-14, Dec. 3, 2010, ECF No. 160 (Grant testifying that Vice is "definitely the best of the best"). Evidence also existed from which the jury could have concluded that the Vice Unit was considered more prestigious and desirable than other units because it was a "fast track" to detective. Trial Tr. vol. 4, 91:6-18, Dec. 2, 2010, ECF No. 159 (Captain J.D. Hawk explaining that transferring to Vice helped him move to detective quickly); Trial Tr. vol. 5, 134:15-21 (Grant testifying that Vice was a fast track to detective). Although he would not *admit* Vice was more

---

speech." *Deprado*, 264 F. App'x at 772. The officer further contended that the transfer deprived him of educational and travel opportunities, but he "presented no evidence of any specific opportunities he lost." *Id.*

prestigious, Police Chief Ricky Boren confirmed that Vice officers "have to be motivated," "have to get out on their own," and "have to initiate cases on their own." Trial Tr. vol. 3, 120:11-13, Dec. 1, 2010, ECF No. 158. A reasonable jury could construe this testimony along with the other evidence to conclude that a reasonable officer would consider Vice to be a more prestigious assignment than Burglary and Theft.

Columbus emphasizes that Plaintiff's new duties in Burglary and Theft were less arduous because "they involved the response to reported crimes rather than self-initiated interdiction work." Def.'s Mem. in Supp. of Renewed Mot. for J. as a Matter of Law 3, ECF No. 162 [hereinafter Def.'s Mem.]. That is exactly why Plaintiff objected to the transfer; Plaintiff's theory at trial was that his transfer from Vice to Burglary and Theft was similar to transferring a combat Army Ranger to a desk job against his will. A reasonable juror could conclude that the evidence supported this theory because Vice agents were handpicked and had to be motivated self-starters who could work tough cases with minimal supervision, while the Burglary and Theft division was more structured and involved less self-initiated work. Moreover, evidence was presented from which a reasonable juror could conclude that a transfer out of Vice could be viewed as a punishment. *E.g.*, Trial Tr. vol. 4, 250:1-6 (Officer Bill Tuning testifying that he told

6

police department internal investigators that "it's kind of dangerous to complain about anything in the unit, because if you do, you might have a black mark on you, you might be black-balled, you might end up being assigned to the Riverwalk").

For all of these reasons, the Court concludes that there was a legally sufficient evidentiary basis for a reasonable jury to conclude that the transfer from Vice to Burglary and Theft would dissuade a reasonable and motivated police officer from making or supporting a charge of discrimination. Accordingly, the jury's finding that the transfer was a materially adverse employment action cannot be disturbed by the Court.

B. Administrative Assignment

Building upon its argument that Plaintiff's transfer from Vice to Burglary and Theft was not a materially adverse action, Columbus argues that Plaintiff alone was responsible for his prolonged administrative assignment because he refused the offer of a transfer out of the Vice unit. Both sides agree that the administrative assignment was properly commenced. Plaintiff contends, however, that Chief Boren kept him on administrative assignment much longer than other officers who had not complained of employment discrimination, and Columbus does not seriously dispute that the evidence supports this argument. Columbus also does not argue that the lengthy administrative assignment was not

7

materially adverse. Rather, the City argues that Plaintiff "cannot create a retaliation case by refusing to accept a non-retaliatory transfer." Def.'s Mem. 6. Columbus's argument ignores the connection between the extended administrative assignment and the retaliatory transfer from Vice to Burglary and Theft. Plaintiff presented evidence, which the jury accepted, that the reason he was subjected to the extended administrative assignment was because he would not agree to the transfer to Burglary and Theft, which transfer the jury found to be a materially adverse employment action, as explained previously. Acceptance of Columbus's argument would require a holding that an employee must accept a transfer that the jury finds retaliatory. The Court finds that sufficient evidence existed for a reasonable jury to conclude that the City, by tying the length of Plaintiff's administrative assignment to his willingness to accept a retaliatory transfer, was responsible for the lengthy administrative assignment.

C. Causation

Columbus argues that, even if the transfer was materially adverse and even if the City was responsible for the lengthy administrative assignment, Plaintiff failed to present sufficient evidence to establish causation between his protected activity and the adverse employment actions. To establish a causal link between protected activity and an adverse employment action, a plaintiff

8

"merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1278 (11th Cir. 2008). A "'close temporal proximity' between the protected expression and an adverse action is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). If, however, "there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." *Id.*

Columbus contends that this is a mere "temporal proximity case" and that Plaintiff's protected activity—his complaints made on January 10, 2006, January 21, 2006, January 24, 2006, and April 10, 2006—is too far removed from Chief Boren's decision to keep Plaintiff on administrative assignment and his decision to transfer Plaintiff out of the Vice unit. The City's argument ignores the evidence that an ongoing debate continued between Plaintiff and the Chief regarding Plaintiff's assignment, and that when Plaintiff reiterated his complaints of discrimination and retaliation in April 2006, Chief Boren told Plaintiff he would not be assigned back to the Vice unit. Furthermore, evidence existed from which a reasonable jury could conclude that Plaintiff remained on administrative assignment until he finally "consented" to the

9

retaliatory transfer, thus supporting Plaintiff's claim that his extended administrative leave was directly tied to the retaliatory transfer as found by the jury. For all of these reasons, there was a legally sufficient evidentiary basis for a reasonable jury to conclude that Plaintiff's protected activity was causally linked to the adverse employment actions.

D. Fair Treatment Policy

Columbus contends that even if Plaintiff presented sufficient evidence to establish actionable retaliation, Plaintiff's claims are barred for failure to follow the City's fair treatment policy. Essentially, the City argues that the Court should create an affirmative defense to retaliation claims that is similar to the *Faragher-Ellerth* affirmative defense to Title VII sexual harassment claims. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). Columbus argues that it exercised reasonable care to prevent and correct unlawful retaliation and that Plaintiff unreasonably failed to take advantage of the City's corrective opportunities.

Pretermitting whether the Eleventh Circuit recognizes a *Faragher-Ellerth* defense in the retaliation context, the defense was not available to Columbus at trial because the City waived it. Columbus did not raise this potential affirmative defense until the

first day of trial—well after the Court entered the final pretrial order.  Therefore, the Court found that the City had waived this defense.  Trial Tr. vol. 1, 25:5-13, Nov. 29, 2010, ECF No. 156; *see Diaz v. Jaguar Rest. Grp., LLC*, 627 F.3d 1212, 1214-15 (11th Cir. 2010) (per curiam) (finding waiver of affirmative defense where defendant did not raise defense until shortly before trial and did not raise issue during pretrial conference: "If ever there were a classic case of waiver, this is it!").  Columbus offers no compelling reason for the Court to reconsider this ruling.[2]

**II. Motion for New Trial or for Remittitur**

Columbus contends that even if it is not entitled to judgment as a matter of law, it is entitled to a new trial or remittitur pursuant to Federal Rule of Civil Procedure 59.

A.  <u>Motion for New Trial</u>

Under Rule 59(a), the Court may grant a new trial on all or some of the issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  "A judge should grant a motion for a new trial when the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though

---

[2]Columbus contends that it asserted certain defenses in its Answer that support its argument regarding the proposed affirmative defense.  These defenses—the sixth, seventh, and sixteenth—did not, however, give Plaintiff or the Court fair notice that Columbus sought to assert a *Faragher-Ellerth*-type defense to Plaintiff's retaliation claims.

11

there may be substantial evidence which would prevent the direction of a verdict." *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) (internal quotation marks omitted). Columbus argues that it is entitled to a new trial because the Court erroneously found that the City waived its final policymaker defense.

Plaintiff maintained throughout the pendency of this action that he could pursue his § 1981 claims against Columbus based on Chief Boren's employment decisions. Columbus did not dispute this contention until shortly before trial, and in fact unequivocally admitted that Chief Boren was the City's final policymaker at the final pretrial conference. It is noteworthy that the City did not specifically raise the final policymaker issue in its Answer;[3] nor did it assert the final policymaker defense in support of its motion for summary judgment.[4] Perhaps most importantly, the City,

---

[3]Columbus appears to contend that its seventh and fourteenth defenses were sufficient to put Plaintiff and the Court on notice of the City's contention that Chief Boren is not the City's final policymaker for purposes of this case. The Court disagrees; even a generous and strained reading of those defenses supports no such contention.

[4]Columbus did generally argue at summary judgment that, under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a plaintiff asserting § 1983 claims against a municipality must show that the challenged actions were the result of the city's policy or custom. Def.'s Br. in Supp. of Summ. J. 6-7, ECF No. 57-1. Columbus did not, however, argue that Chief Boren was not the City's final policymaker for purposes of this case. The evidence at summary judgment showed that Chief Boren made and/or reviewed the police department employment decisions, and the Court concluded that "at a minimum genuine issues of material fact" existed on this issue. Order 41, Aug. 25, 2008, ECF No.

12

at the final pretrial conference, agreed that Chief Boren *was* the City's final policymaker for purposes of this case. Hr'g Tr., 8:16-18, Aug. 10, 2010, ECF No. 140. Notwithstanding this unequivocal admission, the City appears to contend that it preserved the final policymaker defense by generally referring to it in the "special authorities" section of the proposed pretrial order. In that portion of the pretrial order, the City contends generally that "[t]he City is not liable for the acts of its subordinate employees unless the challenged act may fairly be said to represent official policy, such as when the decisionmaking employee possessed final policy-making authority over the employment decision." Pretrial Order 11, ECF No. 138. Counsel's reliance upon this vague language tucked away in the "special authorities" section of the pretrial order is disingenuous, particularly in light of counsel's clear and unequivocal admission at the pretrial conference that Chief Boren *was* the final policymaker in this case. The City's admission was clear to the Court and to Plaintiff's counsel, and thus relieved Plaintiff's counsel of presenting evidence to establish a fact that the City had obviously conceded in open Court.

---

92. Accordingly, the Court found that Chief Boren was, for summary judgment purposes, the City's final policymaker with regard to police department employment decisions. *Id.* at 42.

Counsel for the City argues that the Court abused its discretion when it refused to allow the City to withdraw this admission on the eve of trial. On November 12, 2010—a little more than two weeks before the trial was to begin and more than six weeks after the pretrial conference where the admission was made—the City sent a letter to the Court contending that the pretrial conference concession was made in error and that the City "now understand[s] that . . . Chief Boren is not a final decision or policy maker for the City with regard to employment decisions." Letter from T. Gristina to the Court 1, Nov. 12, 2010, ECF No. 139. In support of this assertion, the City cited the exact same case it cited in the proposed pretrial order on the final policymaker issue. Thus, it is clear that counsel's understanding of the relevant case law was not a new development as suggested in the letter. Rather, Columbus was keenly aware of the relevant authority on the final policymaker issue at the time of the pretrial conference, and the City nonetheless conceded that Chief Boren *was* a final policymaker for purposes of this case.

Based on the City's admission during the pretrial conference, the final policymaker issue was not specifically listed in the pretrial order as an issue for determination at trial. Plaintiff's attorneys were entirely justified in their expectation that they would not be required to present evidence at trial on this issue

beyond the City's admission that Chief Boren was the final policymaker in this case. The Court found that the City's November 12 letter was a late attempt to amend the pretrial order, and the Court concluded that Columbus had waived any right to contest whether Chief Boren was the final policymaker with regard to his actions in this case. Trial Tr. vol. 1, 18:15-20; *see Diaz*, 627 F.3d at 1214-15 (finding waiver of affirmative defense where defendant did not raise defense until shortly before trial and did not raise issue during pretrial conference). Permitting the City's tardy amendment to the pretrial order would have significantly prejudiced Plaintiff, whose counsel had prepared the case for trial in reliance upon the City's admission that Chief Boren was the final policymaker. The Court concluded that the City's apparent tactical change of heart on the eve of trial was not sufficient reason to amend the pretrial order. Columbus has offered no compelling reason for the Court to reconsider its decision. The City is not entitled to a new trial based upon the Court's denial of its late request that the pretrial order be amended to permit it to withdraw its pretrial admission.

B. Motion for Remittitur

Columbus argues that the amount of the jury's damages award was excessive and should be reduced if the Court denies its motion for new trial. "A court which believes the jury's verdict is

15

excessive may order a new trial unless the plaintiff agrees to remit a portion of the jury's award." *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1328 (11th Cir. 1999). "As a general rule, a remittitur order reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence." *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1266 (11th Cir. 2008) (internal quotation marks omitted).

Having heard the evidence at trial and appreciating the deference due to a jury's determination of such issues, the Court finds that the jury's award is not beyond the realm of reasonableness. *See Edman v. Marano*, 177 F. App'x 884, 888 (11th Cir. 2006) (per curiam) (deference to jury award of emotional damages particularly appropriate due to nature of such damages); *see also Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1315 (11th Cir. 2001) (affirming district court's denial of remittitur of $225,000 jury verdict in false arrest case). Accordingly, the Court declines to remit the jury's damage award.

### III. Motion to Stay Without Security

The City asks that the Court stay—without a bond—the execution of proceedings to enforce the judgment pending the disposition of its Motion for Judgment as a Matter of Law and pending a subsequent appeal to the Eleventh Circuit. The City's motion to stay pending

16

the disposition of the motion for judgment as a matter of law is now moot. The remaining issue is whether the Court should require a bond as a condition of staying execution of the judgment pending appeal.

Federal Rule of Civil Procedure 62(d) allows an appellant to obtain an automatic stay of execution of judgment pending an appeal by posting a bond. The Court may, in its discretion, waive the bond requirement of Rule 62(d). *United States v. Certain Real & Pers. Prop. Belonging to Hayes*, 943 F.2d 1292, 1296 (11th Cir. 1991); *accord Dillon v. City of Chicago*, 866 F.2d 902, 904 (7th Cir. 1988), *cited with approval in Campbell v. Rainbow City, Ala.*, 209 F. App'x 873, 876 (11th Cir. 2006) (per curiam). In *Dillon*, the Seventh Circuit Court of Appeals provided district courts with criteria to consider in determining whether to waive the bond requirement:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*Dillon*, 866 F.2d at 904-05 (citations omitted) (internal quotation marks omitted). In support of its motion, Columbus submitted the

17

affidavit of its finance director.  Def.'s Mot. to Stay Without Security Ex. A, Hodge Aff., ECF No. 163-1.  Based on that affidavit, the Court is confident that the City has sufficient funds to pay the judgment in a timely manner if affirmed on appeal. Accordingly, the City's Motion to Stay Without Security (ECF No. 163) is granted.

CONCLUSION

For the reasons set forth above, the City's Renewed Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial or Remittitur (ECF No. 162) is denied.  The City's Motion to Stay Without Security (ECF No. 163) is granted.

IT IS SO ORDERED, this 10th day of March, 2011.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE