IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

BYRON N. HICKEY,                    *

    Plaintiff,                    *

vs.                                 *      CASE NO. 4:07-CV-96 (CDL)

COLUMBUS CONSOLIDATED              *
GOVERNMENT,
                                    *
    Defendant.
                                    *
_____    *

O R D E R

As the prevailing party in this action, Plaintiff Byron Hickey
seeks to recover attorneys' fees in the amount of $310,600.50 from
Defendant, the Columbus Consolidated Government.[1]  *See* Pl.'s Mot.
for Award of Att'ys' Fees, ECF No. 165.  For the following reasons,
the Court grants Plaintiff's motion to the extent that it awards
Plaintiff attorneys' fees in the amount of $179,855.50.

BACKGROUND

Plaintiff Byron Hickey is a police officer with the Columbus
Police Department.  He filed a Complaint against the Columbus
Consolidated Government ("Columbus" or "the City") and eight
individual Defendants alleging that Defendants discriminated
against him because of his race and retaliated against him for
supporting the race and sex discrimination complaints of a fellow

---

[1]Plaintiff also submitted a Bill of Costs (ECF No. 164).  The Court
does not address the Bill of Costs in this Order because costs will be
taxed by the Clerk.

officer, in violation of 42 U.S.C. § 2000e *et seq*. ("Title VII"),
42 U.S.C. § 1981 ("§ 1981") and the Equal Protection Clause.
Specifically, Plaintiff claimed that Defendants (1) subjected him
to disparate discipline because of his race, (2) gave Plaintiff a
less favorable assignment because of his race, (3) retaliated
against Plaintiff for supporting the race and sex discrimination
complaints of a fellow officer by giving him a negative performance
review, (4) retaliated against Plaintiff by placing him on a
lengthy administrative assignment, and (5) retaliated against
Plaintiff by transferring him from the Vice unit to the Burglary
and Theft unit. Plaintiff also claimed that Defendants retaliated
against him in violation of his First Amendment right to exercise
free speech; negligently retained and supervised certain Columbus
employees in violation of state law; and intentionally inflicted
Plaintiff with emotional distress in violation of state law.
During discovery, Plaintiff voluntarily dismissed Defendant Hugley
from the case. Stipulation of Dismissal of Hugley, ECF No. 26.

Defendants filed a motion for summary judgment, and the Court
granted the motion as to all of Plaintiff's individual capacity
claims against Defendants Barron, Poydasheff, Walton, and
Wetherington. Order on Defs.' Mot. for Summ. J. 55, Aug. 25, 2008,
ECF No. 92 [hereinafter MSJ Order]. The Court also granted
Defendants' motion for summary judgment as to Plaintiff's (1) Title

VII and § 1981 discrimination claims against the City, except those based on the transfer from Vice to Burglary and Theft; (2) Title VII retaliation claims against the City other than those based on the negative performance review, the extended administrative assignment, and the transfer to Burglary and Theft; (3) § 1981 retaliation claims against the City other than those based on the extended administrative assignment and the transfer to Burglary and Theft; (4) equal protection claims against the City, except those based on Plaintiff's transfer from Vice to Burglary and Theft; (5) First Amendment claims; (6) state law claims; (7) claims against Defendant Boren in his individual capacity as to any claims other than the § 1981 retaliation claims based on the extended administrative assignment and the § 1981 and equal protection claims based on the transfer to Burglary and Theft; and (8) claims against Hawk and Horiuchi in their individual capacities as to any claims other than the § 1981 claim based on the negative performance review. *Id.* at 54-55. Following the summary judgment order, the only Defendants remaining were Columbus, Boren, Hawk, and Horiuchi, and the only claims remaining related to the negative performance review, the extended administrative assignment, and the transfer from Vice to Burglary and Theft. *Id.* at 55-56.

Boren, Hawk, and Horiuchi appealed the denial of qualified immunity. The Eleventh Circuit Court of Appeals reversed the

denial of qualified immunity as to Plaintiff's claims against Hawk and Horiuchi and Plaintiff's discrimination claim against Boren for the transfer to Burglary and Theft. *Hickey v. Columbus Consol. Gov't*, 372 F. App'x 11, 14-15 (11th Cir. 2010). Plaintiff subsequently dismissed his remaining individual capacity claim against Boren, leaving no individual capacity claims to be tried against any Defendant; the only claims remaining were against Columbus. Stipulation of Dismissal, ECF No. 127.

In light of the Eleventh Circuit's opinion, the Court granted judgment as a matter of law as to Plaintiff's Title VII, § 1981, and equal protection discrimination claims based on Plaintiff's transfer from Vice to Burglary and Theft. Order 2, ECF No. 129. Thus, the only claims remaining in the case at trial were (1) Plaintiff's Title VII retaliation claim for the negative performance review, (2) Plaintiff's Title VII and § 1981 retaliation claims for the extended administrative assignment, and (3) Plaintiff's Title VII and § 1981 retaliation claims for the transfer from Vice to Burglary and Theft.

After five days of trial, the Court granted the City's motion for judgment as a matter of law as to Plaintiff's claims based on the negative performance review. The remaining retaliation claims were submitted to the jury, which found that Columbus retaliated against Plaintiff for opposing unlawful discrimination, including

race discrimination.  Verdict 1-3, Dec. 6, 2010, ECF No. 148.  The jury awarded Plaintiff $306,969.55 on his claims.

Plaintiff moved for attorneys' fees pursuant to Federal Rule of Civil Procedure 54(d)(2) and Middle District of Georgia Local Rule 54.1.  He seeks attorneys' fees in the amount of $310,600.50.[2] In support of his motion, Plaintiff submitted the affidavits of his attorneys Gwyn Newsom, Richard Bunn, and Maxine Hardy, and the affidavit of Newsom's paralegal Sheryl Herring.  He also submitted supporting affidavits from attorneys Janet Hill and John Roper.  In addition, Plaintiff submitted a table of time entries documenting his legal team's total time expended on this case and his legal team's claimed time.  Pl.'s Mot. for Att'ys' Fees Ex. A, Pl.'s Time Entry Table, ECF No. 165-2 [hereinafter Pl.'s Fee Chart].

Plaintiff's records show that his legal team expended more than 1300 hours on this case, but Plaintiff is seeking fees for approximately 1040 hours.  Based on the Court's calculations, Plaintiff seeks to recover for: 33.4 hours for pre-filing activities; 104.4 hours for discovery; 167 hours for activities related to Defendants' summary judgment motion; 368.2 hours for trial preparation, including time spent by Hardy reviewing the case

---

[2]Plaintiff initially sought $387,221.25 in attorneys' fees, including a 25% enhancement of $77,444.25.  After Defendant filed its opposition to Plaintiff's motion for attorneys' fees, Plaintiff reduced his fee request as to certain items, claimed additional fees related to filing his reply brief, and dropped his request for the 25% enhancement.

to prepare for trial while the matter was on appeal;[3] 229.4 hours for trial, and 142.4 for post-trial work. Plaintiff is not seeking to recover for any hours related to the appeal.

Plaintiff contends that his fee request excludes time which Plaintiff's counsel found to be attributed solely to unsuccessful claims—the state law claims, First Amendment claims, and claims against the individual Defendants. For example, Plaintiff did not claim any time for certain discovery activities related to the individual Defendants. *See, e.g.,* Pl.'s Fee Chart 4, Oct. 31, 2007 time entries. Plaintiff also asserts that his fee request encompasses a "25% reduction in time for all pretrial work which could possibly be related to lost claims." Pl.'s Br. in Supp. of Mot. for Atty's' Fees 10, ECF No. 165-1 [hereinafter Pl.'s Mot.]. For example, Plaintiff's counsel reduced by 25% the time claimed for drafting the Complaint, for deposing various witnesses, and for drafting the summary judgment response. *See, e.g.,* Pl.'s Fee Chart 2, May 22, 2007 time entry; *id.* at 5, November 21, 2007 time

---

[3] Plaintiff categorized his legal team's time into seven categories: pre-filing, discovery, summary judgment, appeal, trial preparation, trial, and post-trial work. He generally separated the hours into categories by date only. For example, Plaintiff appears to have categorized most of the work done between September 24, 2008 and May 5, 2010 as "Appeal." Plaintiff is not seeking fees for time related to the appeal. Rather, he is seeking fees for other activities during that time period, such as Hardy's work relating to trial preparation and Newsom's work relating to case management and client counseling. *See, e.g.,* Pl.'s Fee Chart 14-15 (Oct. 4, 2008-Oct. 20, 2008 and Nov. 14, 2008 time entries). The Court finds that such time—23.1 hours for Hardy and 0.7 hours for Newsom is better categorized as "Trial Preparation."

entries; *id.* at 10, February 25, 2008 time entry. Based on the claimed hourly rates for the attorneys and legal assistant, the claimed time results in a claimed fee of $310,600.50. Plaintiff argues that this fee is warranted because he obtained substantial relief and deserves compensation for vindicating an important public interest.

In response, Columbus contends that Plaintiff is only entitled to $78,986.25 in attorneys' fees. First, Columbus argues that the Court should reduce the fees to account for excessive time spent on certain tasks. Def.'s Opp'n to Pl.'s Mot. for Att'y's Fees 8-10, ECF No. 169 [hereinafter Def.'s Opp'n] (suggesting reductions to specific time entries). Second, Columbus asserts that Plaintiff's counsel already received payment for certain activities in the related case of *Davenport v. City of Columbus, Ga.*, No. 4:06-CV-150 (CDL) (M.D. Ga.). *Id.* at 8-12. Third, Columbus contends that the number of hours must be reduced based on Plaintiff's failure to prevail on claims that were separate and distinct from the two retaliation claims on which Plaintiff did prevail. Columbus suggests a 75% reduction on all time entries made on or before June 7, 2010, as well as a 50% reduction on all time entries made on or after June 8, 2010 through the entry of judgment. *Id.* at 13. Finally, Columbus contends that the Court should use a lower hourly rate than the rates proposed by Plaintiff. *Id.* at 14-15.

## I.   Attorneys' Fees Standards

The Court in its discretion may award a reasonable attorney's fee to the prevailing party.  42 U.S.C. §§ 1988(b), 2000e-5(k). Columbus does not dispute that Plaintiff is the prevailing party in this action.[4] *See Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989) (noting that a party is a "prevailing party" if he succeeded on "any significant issue in litigation" that achieved "some of the benefit" he sought in bringing suit (internal quotation marks omitted)).  Plaintiff is the prevailing party in this action because he sought to prove employment discrimination, and the jury found that Columbus retaliated against Plaintiff for supporting the race and sex discrimination complaints of a fellow officer.

"There is no precise rule or formula" for making a fee determination, but the starting point for calculating a reasonable fee is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 436 (1983).  The resulting product is the lodestar, and there is a "strong presumption" that the lodestar figure represents a reasonable fee. *Pennsylvania v. Del. Valley Citizens'*

---

[4]Columbus notes that the outcome of any appeal could impact Plaintiff's prevailing party status.

*Council for Clean Air*, 478 U.S. 546, 565 (1986). After the Court calculates the lodestar, the Court may adjust the fee upward or downward based on the results obtained. *Hensley*, 461 U.S. at 434; *see also Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988).

## II. Hours Reasonably Expended

Fee applicants must exercise billing judgment. *Hensley*, 461 U.S. at 434. This means that fee applicants must exclude from their applications "excessive, redundant or otherwise unnecessary" hours—"which are hours 'that would be unreasonable to bill to a client and therefore to one's adversary.'" *Am. Civil Liberties Union v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1301). "[A] lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights[.]" *Norman*, 836 F.3d at 1301. Furthermore, "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Hensley*, 461 U.S. at 440; *Norman*, 836 F.2d at 1302.

In evaluating the number of hours, the Court should exclude hours that were not reasonably expended by counsel, making exclusions for excessive or unnecessary work on given tasks.

*Hensley*, 461 U.S. at 434; *Norman*, 836 F.2d at 1301.  While the Eleventh Circuit has directed district courts to be "reasonably precise in excluding hours thought to be unreasonable or unnecessary," *Norman*, 836 F.2d at 1301, the Eleventh Circuit also recognizes that an hour-by-hour review may in some cases be infeasible or impractical, *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) (per curiam).

Columbus argues that Plaintiff's counsel spent excessive time on certain tasks, that Plaintiff's counsel has already been compensated for certain tasks with the fee award in the *Davenport* matter, and that Plaintiff seeks fees for time his counsel spent on unsuccessful claims.  Columbus pointed the Court to specific time entries it asserts are excessive, and Columbus also seeks an across-the-board reduction to the time entries to account for the unsuccessful claims.

A.  Excessive Time

Columbus specifically objects to the amount of time Plaintiff claims for (1) pre-Complaint client conferences, (2) summary judgment opposition, (3) motion for attorneys' fees, and (4) voir dire review.  The Court addresses each issue in turn.

1.  *Pre-Complaint Client Conferences*

Plaintiff claims 24.8 hours of time related to client conferences that occurred before Plaintiff's counsel drafted and

10

filed the Complaint.[5]  *See generally* Pl.'s Fee Chart 1-2.  Columbus asserts that these hours simply relate to submitting an EEOC Charge and considering whether to file a Complaint and contends that "the total reasonable number of hours would have been, at most, 17."  Def.'s Opp'n 8.

According to Plaintiff, these time entries relate to (1) discussing Plaintiff's potential claims, (2) drafting an EEOC Charge, (3) drafting an ante litem notice, and (4) counseling regarding ongoing retaliation against Plaintiff, such as the lengthy administrative assignment and the transfer from Vice to Burglary and Theft.  *See generally* Pl.'s Fee Chart 1-2; Pl.'s Reply in Supp. of Pl.'s Mot. for Att'ys' Fees 2, ECF No. 173 [hereinafter Pl.'s Reply].  The Court finds that 24.8 hours is not excessive for these client conferences.

### 2.  Summary Judgment Opposition

According to Columbus, Plaintiff's legal team spent too much time—a total of 171.5 hours—"preparing [Plaintiff's] memorandum in opposition to summary judgment and the statement of material facts."  Def.'s Opp'n 8-9 & n. 6.  This particular objection

_____

[5]Columbus contends that Plaintiff claims 25.6 hours of time related to client conferences, but some of the entries to which Columbus objects are actually conferences with opposing counsel regarding Plaintiff's case.  *Compare, e.g.,* Def.'s Opp'n 8 n.4 (listing Aug. 14, 18, and 24 as client conference entries) *with* Pl.'s Fee Chart 1, Aug. 14, 18, & 24, 2006 time entries (claiming that time was spent in conference with opposing counsel).

appears to relate only to the time Plaintiff's counsel spent *drafting* the response; it does not appear to extend to all tasks related to opposing summary judgment, such as seeking filing extensions and supplemental briefing. According to the Court's calculations, Plaintiff's legal team *expended* the following hours related to drafting the summary judgment response: Newsom - 122.5 hours; Bunn - 13.2 hours; Herring - 33.8.[6]

Columbus argues that this time is excessive and that Plaintiff's entries "fail to account for the overlap with the *Davenport* summary judgment motion, which addressed many of the same facts and legal issues." Def.'s Opp'n 9. Columbus "submits that 75 hours for Ms. Newsom, 5 hours for Mr. Bunn and 15 hours for Ms. Herring would be reasonable." *Id.* Although there was some overlap between the facts in this case and *Davenport*, the bulk of the facts were highly case-specific, as was the application of the law to those facts. That Plaintiff's counsel may have expended time and effort opposing summary judgment in a similar case does not mean that Plaintiff's legal team has already been compensated for the

---

[6]These numbers are based on Plaintiff's time entries for February 12, 2008, February 25-29, 2008, March 11, 2008, March 15, 2008, and March 17-31, 2008—excluding entries related to tasks such as seeking filing extensions and conferring with client regarding summary judgment issues. *See* Pl.'s Fee Chart 9-12. These numbers are not the same as the City's numbers for Newsom's and Bunn's time entries; the City claims that Newsom billed 121.5 hours and that Bunn billed 16.2 hours for summary judgment opposition. Def.'s Resp. 8-9. The Court is unable to reconcile the discrepancies but finds that they are immaterial.

summary judgment opposition in this case.  Defendants' summary judgment brief was twenty-seven pages long, and its statement of material facts was nearly forty pages long.  Defendants referenced numerous depositions and nearly thirty exhibits.  In response, Plaintiff filed a twenty-five-page brief and a ninety-three-page fact statement, which referenced seventy exhibits and numerous depositions.  It was not clearly excessive for Plaintiff's legal team to bill 122.5 hours for Newsom's time, 13.2 hours for Bunn's time, and 33.8 hours for Herring's time.[7]  The issue of adjusting to account for unsuccessful claims will be addressed below.

### 3. Motion for Attorneys' Fees

Plaintiff claims more than 130 hours for the preparation of his motion for attorneys' fees, including nearly ninety hours spent by Newsom.  *See* Pl.'s Fee Chart 21-22.  In other words, Newsom spent more time preparing Plaintiff's fee application than she did trying Plaintiff's case.  *Compare id. with id.* at 20-21 (billing approximately eighty-four hours for time spent at trial).  Based on the Court's review, approximately half of Newsom's time was spent reviewing and revising Plaintiff's billing statement.  *See* Pl.'s

---

[7]The Court notes that the time entries appear to be focused on attorney work; there is no separate explanation of what the paralegal did. For example, on February 28, 2008, Newsom billed 9.3 hours and Herring billed 2.5 hours.  The time entry states: "Revising response to Motion for Summary Judgment; revising responses to SMF's; research regarding same." Pl.'s Fee chart 10.  The Court presumes that Herring performed support tasks related to Newsom's work.

Fee Chart 21-22. Such time is grossly excessive under the circumstances of this case. Plaintiff's legal team asserts that it "maintained accurate records of time spent" on this matter. Pl.'s Mot. 7; *see also* Pl.'s Mot. Ex. C, Bunn Aff. ¶ 7, ECF No. 165-4. Therefore, it should not have taken a full work week to "revise" the time entries. Moreover, Plaintiff represents that he took an across-the-board reduction of 25% for pretrial work related to lost claims, so there was no complicated method for revising the bill to account for lost claims. Under these circumstances, it would have been reasonable for Newsom to bill no more than ten hours for reviewing and revising the billing records.

According to the Court's calculations, Newsom spent approximately forty hours drafting Plaintiff's motion for attorneys' fees. *See* Pl.'s Fee Chart 21-22. Columbus also asserts that "there is no way to justify spending so much time on a motion that Plaintiff's counsel has filed before (in *Davenport*) under similar circumstances." Def.'s Opp'n 10. The Court agrees. Based on the Court's review, large sections of Plaintiff's brief were copied directly from the brief Plaintiff's counsel filed in support of Alicia Davenport's fee application in 2008. Accordingly, the Court finds that it would have been reasonable for Newsom to bill no more than twenty hours for the fee application. As to the rest of the legal team, the Court finds that it was reasonable for Bunn

to bill two hours for reviewing the attorneys' fee motion and preparing his affidavit in support; it would have been reasonable for Hardy to bill five hours for reviewing the attorneys' fee motion and preparing her affidavit in support; and it would have been reasonable for Herring to bill sixteen hours for helping the attorneys prepare the fee application, including the fee chart.

### 4. Voir Dire Review

Each of Plaintiff's attorneys billed one hour for reviewing the City's proposed voir dire questions. Pl.'s Fee Chart 17, Aug. 3, 2010 time entry. The City claims that such time is excessive. The Court agrees. "There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman*, 836 F.2d at 1302. A fee applicant may recover for the hours of multiple attorneys if he shows that "the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation." *Barnes*, 168 F.3d at 432. Here, Plaintiff has made no showing why three lawyers each had to bill one hour for reviewing a four-page list of voir dire questions. The Court finds that it would have been reasonable for Plaintiff's team to bill for the one hour lead counsel Newsom spent reviewing the voir dire questions.

B.   *Davenport* Overlaps

In addition to its objections regarding excessive time, the City argues that certain time should not be compensated here because it was already compensated in the *Davenport* matter. Specifically, Columbus contends that Plaintiff should not be permitted to recover fees related to (1) depositions that were common to this action and *Davenport*, (2) a supplemental brief that was nearly identical to a similar brief in *Davenport*, and (3) certain "duplicative" entries.

1.   Depositions

Citing the original fee chart Alicia Davenport submitted in support of her fee application, Columbus claims that Plaintiff's counsel is attempting to double-dip for depositions that were taken in support of both Plaintiff's and Davenport's cases. Def.'s Opp'n Ex. B, Davenport Time Entry Chart, Nov. 10, 2008, ECF No. 169-1. Columbus overlooks the fact that several of the deposition-related time entries in Plaintiff's time chart specify that the time was related only to "Hickey issues." Pl.'s Fee Chart 5, Nov. 21, 2007 time entries. Moreover, Columbus ignores the fact that Davenport reduced her fee request by half as to overlapping depositions. *See* Pl.'s Reply in Supp. of Mot. for Atty's' Fees Ex. B, Revised Billable Hours Chart, *Davenport v. City of Columbus, Ga.*, No. 4:06-CV-150(CDL), ECF No. 179-2 [hereinafter *Davenport* Fee Chart];

*accord Davenport v. Columbus Consol. Gov't*, 4:06-CV-150 (CDL), 2009 WL 235253, at *2 n.2 (M.D. Ga. Jan. 30, 2009). Given that the Court's fee award in *Davenport* was based on the reduced fee request—which took into account overlaps—there is no basis for the Court to conclude that the fees related to depositions taken in support of Plaintiff's case have already been paid.

### 2. Supplemental Brief

In both this case and *Davenport*, Plaintiff was permitted to file a five-page response to Defendants' supplemental summary judgment brief. There was some overlap between the two briefs, but the briefs were also case-specific. In *Davenport*, Plaintiff's counsel originally billed seven hours for the supplemental brief but claimed only 3.4 hours in her fee application. *Davenport* Fee Chart 11, June 6 to June 16, 2008 time entries. Here, Plaintiff's counsel billed a total of eleven hours for the supplemental brief.[8] The total billed amount of 14.4 hours for both briefs is not clearly excessive.

### 3. Duplicative Entries

Columbus claims that there are several entries on Plaintiff's fee chart that are duplicative of entries on Alicia Davenport's fee

---

[8]Plaintiff claims only 8.1 hours related to the supplemental brief due to a 25% reduction to account for unsuccessful claims. Pl.'s Fee Chart 13. The issue of adjusting to account for unsuccessful claims will be addressed below.

chart and asserts that it must "be assumed that Plaintiff's counsel has already been compensated for the time in *Davenport*." Def.'s Opp'n 12. Plaintiff's counsel maintains, however, that she "kept time records of the time spent on each case separately." Pl.'s Reply 4. Accordingly, though there is reason to assume that Plaintiff's counsel has been compensated for time billed in the *Davenport* matter, there is no reason to assume that Plaintiff's counsel has already been compensated for time billed in this matter, notwithstanding the existence of similar time entries. The similarity between the time entries does not necessitate a finding that Plaintiff's counsel double-billed two separate clients for the same exact work.

Moreover, the entries are not entirely "duplicative" as Columbus suggests. For example, on October 25, 2007, Plaintiff's counsel billed 0.2 hours in *Davenport* related to correspondence with opposing counsel "re: scheduling depositions." *Davenport* Fee Chart 6. On that same day, Plaintiff's counsel billed 0.2 hours in this matter related to correspondence with opposing counsel "re: deposition scheduling and Plaintiff's supplementary discovery responses." Pl.'s Fee Chart 4. As another example, on December 3, 2007, Plaintiff's counsel billed 0.2 hours in *Davenport* for receipt and review of a letter from opposing counsel "re: discovery issues." *Davenport* Fee Chart 7. That same day,

18

Plaintiff's counsel billed 0.2 hours in this matter for reviewing correspondence from opposing counsel "re: Defendant's refusal to produce relevant discovery." Pl.'s Fee Chart 6.  The distinctions between these time entries lead the Court to conclude that Plaintiff's counsel performed distinct tasks for each client, though the tasks were similar given the parallel litigation track of the two cases, as well as the overlap of witnesses.

Columbus also appears to contend that Plaintiff's counsel double-billed for preparing for and attending the summary judgment hearings in the two cases, but Columbus overlooks the fact that the Court held two separate summary judgment hearings on the same day, one after the other.  It was not unreasonable for Plaintiff's counsel to bill each client for the work spent preparing for and attending each client's respective hearing.  For all of these reasons, the Court declines to strike Plaintiff's time entries as duplicative of those in the *Davenport* matter.

C.  Unsuccessful Claims

Columbus argues that the Court should exclude time spent on Plaintiff's unsuccessful claims.  Plaintiff agrees that some reduction in the number of hours is warranted.  The parties do not, however, agree on how much time should be excluded from the lodestar.  Plaintiff suggests reducing the hours for certain tasks by 25%, while Columbus seeks an across-the-board reduction of 75%

on all time entries made on or before June 7, 2010, as well as a 50% reduction on all time entries made on or after June 8, 2010 through judgment.

### 1. Claims Lost At Summary Judgment or Appeal

As discussed above, Plaintiff lost the following discrete claims at summary judgment and/or appeal: (1) Title VII, § 1981, and equal protection discrimination claims; (2) First Amendment claims, (3) state law claims, and (4) individual capacity claims against all individual Defendants. The Court must deduct time spent on these discrete and unsuccessful claims. *Hensley*, 461 U.S. at 440; *Norman*, 836 F.2d at 1302. The bulk of Plaintiff's billing records do not explain the claims to which each time entry relates, even though the Court asked Plaintiff to make it clear which entries relate to which claims. Plaintiff did not, or could not, do so. Plaintiff's time entries relate to specific tasks, such as deposing witnesses or drafting motions, but they are not parsed out into the amount of time spent on each individual claim, such as "deposed witness on negative performance review claim" or "responded to summary judgment on First Amendment claim."

With the exception of a handful of tasks which Plaintiff appears to concede relate solely to unsuccessful claims (which

Plaintiff has already excluded),[9] it would be difficult, if not impossible, to attribute the time entries to "successful" or "unsuccessful" claims.  Furthermore, Plaintiff did not explain the precise basis for reducing some line items but not others, and it is thus not clear to the Court that Plaintiff's approach to the reduction is adequate to account for unsuccessful claims.  The Court declines to engage in a line-by-line analysis of Plaintiff's time entries and concludes that it should apply an across-the-board reduction of hours to account for Plaintiff's unsuccessful claims.

Taking a strictly numerical approach, the City argues that because Plaintiff lost three of the four categories of claims he brought—discrimination, First Amendment, and state law claims—a 75% reduction is appropriate.  The point of a reduction, however, is to account for *time spent* on unsuccessful claims.  Here, Plaintiff's chief claims were his retaliation claims against Columbus, and he spent the bulk of his summary judgment opposition on those claims.  Though Plaintiff lost his discrimination claims and his retaliation claims against the individual Defendants, those claims were based on the same underlying events as the retaliation claims against Columbus.  Furthermore, though Plaintiff lost on his First Amendment and state law claims, he did not spend a great deal of

---

[9]For example, Plaintiff did not claim any time for certain discovery activities related solely to the individual Defendants.  *See* Pl.'s Fee Chart 4, Oct. 31, 2007 time entries.

time arguing these issues in his summary judgment response, and the Court therefore presumes that he spent little time during discovery on topics exclusively related to those claims. The Court agrees with Plaintiff that a 25% reduction is sufficient. The Court applies that reduction to the time Plaintiff spent on pre-filing activities, discovery, and summary judgment opposition (collectively, "pre-trial activities").[10]

### 2. Claim Lost at Trial

At trial, Plaintiff pursued retaliation claims based on (1) a negative performance review, (2) a lengthy administrative assignment, and (3) a transfer from the Vice unit to the Burglary and Theft unit. The Court granted judgment as a matter of law as to Plaintiff's retaliation claim based on the negative performance review but concluded that evidence of the negative performance review was relevant to Plaintiff's other two claims.

The Court agrees with Columbus that "Plaintiff could have presented the performance evaluation much more expeditiously," Def.'s Opp'n 13 n.19, but disagrees that a 50% reduction is warranted to account for the time Plaintiff's counsel spent

---

[10] The Court includes in this time 14.5 hours expended by Plaintiff's attorneys in late May and early June 2010 that Plaintiff categorized as "trial preparation" due to the dates on which the tasks were performed but which related to the resolution of which claims should proceed to trial. These tasks are more akin to summary judgment opposition than trial preparation.

preparing to try and actually trying the performance review claim. At trial, the evidence was presented in four days. In the Court's view, the evidence—including evidence regarding the performance review—could have been presented in three days if Plaintiff had not been pursuing a separate claim based on the performance evaluation. Accordingly, the Court concludes that a 25% reduction will appropriately account for the time Plaintiff's counsel spent preparing to try and actually trying the performance review claim.

D.   Total Reasonable Hours Expended

In summary, the Court finds that the following hours were reasonably expended by Plaintiff's legal team:

|  | Newsom | Bunn | Hardy | Herring | Total |
|---|---|---|---|---|---|
| Pre-Filing | 25.1 | 0 | 0 | 0 | 25.1 |
| Discovery | 62.8 | 15.5 | 0 | 0 | 78.3 |
| Summary Judgment | 88.9 | 14.3 | 7.7 | 25.4 | 136.3 |
| Trial Preparation | 114.2 | 7.2 | 83.6 | 58.9 | 263.9 |
| Trial | 63.2 | 6.8 | 63.2 | 39 | 172.2 |
| Post-Trial | 35.2 | 2 | 6.1 | 20 | 63.3 |
| *Total* | **389.4** | **45.8** | **160.6** | **143.3** | **739.1** |

III. Reasonable Hourly Rate

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. Here, the relevant market is Columbus, Georgia,

because that is where the case was filed.  *See Barnes*, 168 F.3d at 437; *see also Norman*, 836 F.2d at 1305 (noting that fee award made in Northern District of Alabama did not constitute evidence of the prevailing market rate in Montgomery).  Plaintiff has the burden to produce "satisfactory evidence that the requested rate is in line with prevailing market rates."  *Norman*, 836 F.2d at 1299.  The evidence should show that the claimed rates "were charged in similar cases for similar clients by lawyers of similar skill, experience and reputation."  *Id.* at 1305.  "[T]he best information available to the court is usually a range of fees set by the market place, with the variants best explained by reference to an attorney's demonstrated skill."  *Id.* at 1301.  What a lawyer charges his paying clients "is powerful, and perhaps the best, evidence of his market rate; that is most likely to be what he is paid as determined by supply and demand."  *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir. 2000) (per curiam) (internal quotation marks omitted).

A.  <u>Attorney Billing Rate</u>

Newsom, Bunn, and Hardy are all experienced Columbus litigators: Bunn has been practicing law for more than thirty years, Newsom has been practicing for more than twenty years, and Hardy has been practicing for nearly twenty years.  Bunn has a general practice but has worked on numerous employment cases, and

Newsom and Hardy specialize in employment law. Plaintiff contends that a reasonable hourly rate for Newsom is $350.00 per hour and that a reasonable hourly rate for Bunn and Hardy is $325.00 per hour. Newsom, Bunn and Hardy assert that they "billed" at the requested rates in this case, but they do not assert that these rates were actually billed *and paid* in this case. *See* Pl.'s Mot. Ex. B, Newsom Aff. ¶ 7, ECF No. 165-3; Bunn Aff. ¶ 6; Pl.'s Mot. Ex. D, Hardy Aff. ¶ 6, ECF No. 165-5.

Plaintiff contends that "the prevailing market rate" for employment lawyers in the Middle District of Georgia "ranges from $325.00 to $510.00 per hour for lead counsel . . ., from $175.00 to $325.00 per hour for associate attorneys, and from $85.00 to $175.00 per hour for paralegals." Newsom Aff. ¶ 9. In support of this assertion, Plaintiff points to his legal team's affidavits and the affidavits of Janet Hill and John Roper.

According to Newsom, the prevailing market rate in the Middle District of Georgia for lead counsel in employment discrimination cases "ranges from $325.00 to $510.00 per hour." *Id.* Newsom also stated in her affidavit that she charges "paying clients" her current rate of $350.00 per hour for representation in "employment-related legal matters, including consultations, severance agreement negotiations, as well as litigation." *Id.* ¶ 8. Hardy asserts that the range of rates for civil rights attorneys

with similar experience as Plaintiff's attorneys is "$325 to $500 and even higher in some cases." Hardy Aff. ¶ 6. According to Bunn, "a reasonable market hourly rate for this type of work for plaintiffs' attorneys with [Bunn's] years of trial experience in the Chattahoochee Judicial Circuit would be at least $300.00 to $350.00 per hour." Bunn Aff. ¶ 8.

Janet Hill is an Athens, Georgia attorney who practices law in several divisions of the Middle District of Georgia, including the Columbus division. Pl.'s Mot. Ex. F, Hill Aff. ¶ 9, ECF No. 165-7. Hill states that the "market rate" for lawyers in the Middle District with similar skills as Plaintiff's counsel ranges from $300 to $450 per hour. *Id.* Hill's current hourly rate is $375 per hour, *id.* ¶ 10, though Hill does not state whether that rate is actually billed *and paid*.

John Roper is a Columbus attorney who has been practicing law for approximately twenty-five years. Roper Aff. ¶ 4, ECF No. 167. Roper's practice includes employment litigation work, *id.*, though it is not clear from his affidavit how much of his practice is devoted to employment cases. Roper states that he has "commanded" and "received" $300 per hour for employment discrimination representation. *Id.* ¶ 6. Roper asserts that Newsom's rate of $350 is "a bargain" and that some attorneys in the Middle District with less experience than Newsom charge $500 per hour. *Id.* According

to Roper, the range of rates for employment lawyers representing plaintiffs in Columbus is between $275 and $400 per hour. *Id.* ¶ 12.

Much of this testimony does not "speak to rates actually billed and paid in similar lawsuits." *Norman*, 836 F.2d at 1299. It is therefore entitled to little weight, as is Plaintiff's evidence of prior fee awards and the equivalent hourly rates paid to the attorneys as a result of settlements. Neither agreed-upon rates for settlement purposes nor prior awards are strong evidence of the prevailing market rates because neither is direct evidence of market behavior. *Dillard*, 213 F.3d at 1355. Newsom did, however, state in her affidavit that she charges "paying clients" her current rate of $350.00 per hour for representation in "employment-related legal matters, including consultations, severance agreement negotiations, as well as litigation." Newsom Aff. ¶ 8.

Columbus asserts that the Court should find that the prevailing market rate for attorneys with the skill and experience of Plaintiff's attorneys is $250 per hour. In support of this argument, Columbus points to the billing rate of its three outside attorneys, who billed the City at a rate of $200 per hour until July 1, 2010, when the hourly rate was increased to $250 per hour. *E.g.*, Def.'s Opp'n Ex. G, Stevenson Aff. ¶ 3, ECF No. 169-1.

Columbus and Plaintiff are not similar clients, however; defending a case for a government entity is not the same as prosecuting a case on behalf of an aggrieved employee.

Columbus also presented the affidavits of Neal Callahan and Paul Ivey. Callahan and Ivey are attorneys who practice law in Columbus, Georgia. Def.'s Opp'n Ex. C, Callahan Aff. ¶ 1, ECF No. 169-1; Def.'s Opp'n Ex. D, Ivey Aff. ¶ 1, ECF No. 169-1. Callahan has been practicing law for nearly eighteen years. Callahan Aff. ¶ 1. He has twelve years of experience in employment litigation, which comprises less than half of his practice. *Id.* Callahan has represented both employers and employees, though his recent focus has been on representing employees. *Id.* Callahan charges his employment litigation clients between $250 and $275 per hour, and he represents that his clients have actually paid such rates in lawsuits similar to this action. *Id.* ¶ 8. Ivey has been practicing law for nearly twelve years, and he has a minimal employment litigation practice. Ivey Aff. ¶ 1. Ivey charges his employment litigation clients between $200 and $225 per hour, and he represents that his clients have actually paid such rates in lawsuits similar to this action. *Id.* ¶ 7. It is not entirely clear from the affidavits of Callahan and Ivey that their attested hourly rates were charged in similar cases *for similar clients*.

The evidence before the Court regarding hourly rates billed *and paid* in the Columbus market for employment litigation work representing plaintiffs boils down to three statements. First, Newsom stated that her paying clients pay $350 per hour for employment litigation work. Newsom Aff. ¶ 8. Second, Roper stated that he has billed and received $300 per hour for employment discrimination representation. Roper Aff. ¶ 6. Third, Callahan—who has less employment litigation experience than Newsom or Hardy and less general litigation experience than Bunn—stated that his clients have paid him between $250 and $275 per hour in lawsuits similar to this action. Callahan Aff. ¶ 8.

Based on this evidence, the Court concludes that the prevailing market rate for Columbus lawyers with the skill, experience, and reputation of Plaintiff's lawyers is now $300 per hour for employment discrimination litigation work representing plaintiffs. There is, however, no evidence that $300 per hour has been the prevailing rate since this case was filed in 2007. In fact, in *Davenport*, though Newsom, Hardy, and Bunn claimed the same rates they are now claiming, there was no evidence that such rates were actually billed and paid in similar lawsuits. *Davenport*, 2009 WL 235253, at *6. Therefore, the Court will apply the hourly rate of $250 per hour—which the City agrees is a reasonable hourly rate for Plaintiff's counsel in this case—to the work done by

Plaintiff's counsel prior to 2009.  Such work includes all pre-filing, discovery, and summary judgment activities (collectively, "Pre-Jan. 2009 Hrs.").  The Court finds that an hourly rate of $300 is reasonable for the work of Newsom, Bunn, and Hardy on this case from 2009 to the present.  Such work includes all trial preparation, trial, and post-trial work (collectively, "Post-Jan. 2009 Hrs.").[11]

B.   Paralegal Billing Rate

Plaintiff originally sought to recover for paralegal Herring's work at a rate of $115 per hour.  As the City pointed out, however, Herring's actual billing rate at the time of the *Davenport* matter was $85 per hour.  Plaintiff's counsel claims that Herring's billing rate has been increased to $115.  Newsom Aff. ¶ 21.  Newsom states in her affidavit that Herring's "current hourly rate" is $115, but there is no evidence that Newsom's clients have *paid* this rate.  The City asserts that $85 per hour is the market rate in Columbus for a paralegal of Herring's experience.  *E.g.*, Stevenson Aff. ¶ 4.  Based on the evidence before the Court, the Court

---

[11]For purposes of determining the hours reasonably expended, the Court considered some 2008 time as "trial preparation" time and some 2010 time as "summary judgment" time.  *See supra* notes 3 & 10.  For purposes of calculating the lodestar, the 2008 time, minus the applicable reduction, will be considered as part of "Pre-Trial" time, and the 2010 time, minus the applicable reduction, will be considered as part of "Trial" time.

concludes that $85 per hour is a reasonable hourly rate for Herring's work on this case.

## IV. Calculation of the Lodestar

Based on the foregoing, the lodestar amounts to $179,855.50, as reflected in the table below:

| Name | Pre-Jan. 2009 Hrs. | Hourly Rate | Post-Jan. 2009 Hrs. | Hourly Rate | Recoverable Fees |
|---|---|---|---|---|---|
| Newsom | 174.5 | $250.00 | 214.9 | $300.00 | $108,095.00 |
| Bunn | 29.4 | $250.00 | 16.4 | $300.00 | $12,270.00 |
| Hardy | 17.4 | $250.00 | 143.2 | $300.00 | $47,310.00 |
| Herring | 25.4 | $85.00 | 117.9 | $85.00 | $12,180.50 |
| Total | 246.7 | | 492.4 | | $179,855.50 |

## V. Adjustment to the Lodestar

The Court may adjust the fee upward or downward based on results obtained. *Hensley*, 461 U.S. at 434. If the plaintiff obtained "excellent results," then his attorney should recover "a fully compensatory fee." *Id.* at 435; *see also Norman*, 836 F.2d at 1302. Here, Plaintiff achieved a level of success that justifies a full fee award, with no downward adjustment to the lodestar. The Court further finds that the lodestar provides Plaintiff's counsel with a fully compensatory fee and that no upward adjustment is warranted.

CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's Motion for Award of Attorneys' Fees (ECF No. 165) to the extent described in this Order.  The Court awards Plaintiff attorneys' fees in the amount of $179,855.50.


IT IS SO ORDERED, this 10th day of March, 2011.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE